A96A0737. McCANTS v. THE STATE.
(473 SE2d 514)

POPE, Presiding Judge.

Shannon McCants, along with the co-defendants, Drwan and Delwin Smith (who were brothers), was charged with murder, felony murder and aggravated assault. He entered a guilty plea to voluntary manslaughter and now appeals the entry of that plea. For the reasons set forth below, we affirm.

Before proceeding with the substantive merits of this matter, we address a jurisdictional issue. On February 21, 1995, the court conducted a hearing at which McCants entered a guilty plea to voluntary manslaughter and was sentenced to 20 years to serve. The plea

---

and sentence were stamped filed on February 28, 1995. On the same day, McCants filed a motion to withdraw his plea. The court held a hearing on the motion on April 17, 1995, and denied the motion orally. McCants filed his notice of appeal on April 28, 1995. The court entered its order denying McCants' motion to withdraw the plea on December 4, 1995. The case was docketed in this Court on December 14, 1995.

The question presented is whether this appeal is properly before us given that McCants' notice of appeal was filed more than seven months before the entry of the order denying his motion to withdraw his guilty plea. Based on this Court's recent decision in *Livingston v. State*, 221 Ga. App. 563 (472 SE2d 317) (1996), we conclude that McCants' notice of appeal invoked this Court's jurisdiction. See *Hendrick v. State*, 257 Ga. 514, n. 1 (361 SE2d 169) (1987). As in *Livingston*, here "[t]he early notices and later entered judgments present no appellate delay at all, much less delay prejudicial to the State." *Livingston* at 567.

With respect to the substantive arguments, the record before us shows that McCants entered his plea on February 21, 1995. The court read McCants the charges against him, stated the terms of the plea, and explained that McCants could be sentenced for up to 20 years and that the State was going to recommend a 20-year sentence. On the record, McCants stated that he wanted additional time to talk with his attorney, although he indicated that he had spoken with the attorney earlier that day. The court then explained McCants' rights to him, including the right to call witnesses; the right to take the witness stand and testify; the right to remain silent; and the State's burden of proof. McCants denied that he was under the influence of drugs or alcohol and stated that no one had threatened him to enter the plea. McCants then affirmed that he was giving the plea freely and voluntarily and that it was what he wanted to do. The record indicates that McCants signed the plea and it was entered. After the State presented its factual basis for the plea, McCants stated that he was entering the plea since he did not "stand a chance of going to trial and winning." When McCants stated that he was "forced" to take a plea of guilty, the court again explained that no one was forcing McCants to plead guilty; that he had an absolute right to plead not guilty and to go to trial. McCants then stated that he would take the guilty plea and again affirmed that he understood that he had the right to plead not guilty. He reiterated that he was entering the plea of his own free will. McCants then affirmed that he was satisfied with the services of his attorney and that he did not think his attorney had left undone anything which he should have done. The court found that there was a factual basis for the plea and that it had been entered freely, voluntarily and intelligently.

1. McCants argues that his guilty plea was not freely and voluntarily given, as it was based upon the tainted advice of an ineffective counsel. He argues that his trial counsel, Charles Hawk, was ineffective for his failure to interview and subpoena witnesses, failure to read the State's discovery, and failure to prepare for trial. McCants claims that the testimony of Delwin Smith's counsel established this ineffectiveness.

At the hearing on the motion to withdraw the guilty plea, Hawk testified that he met with McCants several times, had weekly teleconferences with him, and spoke frequently about the matter with McCants' stepfather. Hawk also testified that he reviewed discovery, visited the crime scene, and contacted or tried to contact witnesses. Hawk testified that he advised McCants of the charges against him, the penalty that could be imposed and his possible defenses, and that he also advised McCants of likely results if he pled guilty. Hawk recalled that he met with McCants for more than an hour the morning of the hearing and reviewed the available options with McCants several times. Hawk recalled that he also reviewed the options with McCants' stepfather and that McCants and his stepfather had the opportunity to talk. Hawk stated that the decision regarding whether to enter a plea was ultimately McCants' decision.

Hawk testified that on the eve of trial he learned that co-defendant Drwan Smith would be entering a guilty plea to murder and would be a witness against McCants. Smith's attorney testified that Drwan Smith indicated that he would testify that McCants shot the victim.

McCants presented the testimony of co-defendant Delwin Smith's attorney that Hawk was not prepared for trial and that his conduct constituted ineffective assistance of counsel. Drwan Smith's counsel testified that Hawk appeared apprehensive and that he indicated he had not reviewed discovery and that he needed a continuance. McCants testified that Hawk was not prepared and that because of Hawk's unpreparedness, he was forced to plead guilty. He stated that he would have gone to trial had it not been for Hawk's ineffectiveness.

"Before a guilty plea is accepted by a trial court, the court must determine that the plea is voluntarily made and that the defendant intelligently and understandingly waives his constitutional rights with an understanding of the nature of the charges against him and the consequences of the plea. [Cit.] However, where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. (Cit.) *Hill v. Lockhart*, 474 U. S. 52, 56 (106 SC 366, 88 LE2d 203) (1985). In chal-

lenging the competency of an attorney in a claim of ineffective assistance, a criminal defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In *Hill*, supra, the Supreme Court held that this two-prong test enunciated in *Strickland* is applicable to challenges to guilty pleas based upon counsel's ineffectiveness. Nevertheless, in order to satisfy the second prong of the *Strickland* test, that is, to meet the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, supra at 59. Georgia appellate courts have recognized the *Hill* test in determining the effectiveness of counsel in the context of guilty pleas. [Cits.]" (Punctuation omitted.) *Hall v. State*, 210 Ga. App. 792, 793 (1) (437 SE2d 634) (1993); see also *King v. State*, 215 Ga. App. 139, 141 (2) (449 SE2d 870) (1994). Although Hawk was retained and not appointed counsel, the above standard applies equally to retained and appointed counsel. See *Spence v. State*, 163 Ga. App. 198 (1) (292 SE2d 908) (1982).

We are unconvinced that Hawk's performance fell below an objective standard of reasonableness. Considering the action taken by counsel in preparation of his defense, and the conflict in testimony provided at the hearing, we cannot conclude that the trial court was clearly erroneous in denying McCants' motion to withdraw his plea on this basis. See *Hall v. State*, 210 Ga. App. at 794. Moreover, as discussed in Division 2 below, McCants' plea was intelligently and voluntarily entered.

2. McCants argues that the plea was not intelligently and voluntarily entered, but was the product of coercion resulting from pressure from the trial judge in addition to his counsel's unpreparedness. To the extent that this argument differs from that above, we find it also without merit.

The transcript of the plea hearing reveals that the trial court read the charges against McCants; stated the charge to which he was entering a guilty plea and the possible sentence; explained in detail the rights which McCants would be giving up if he pled guilty and the other consequences of such a plea; inquired into the voluntariness of the plea; and inquired into whether McCants understood the consequences of entering such a plea. Although McCants originally indicated that he wanted to talk more with his attorney, he later said that he was satisfied with Hawk's services. Moreover, McCants consistently stated that he wished to plead guilty to the charges, although he stated that he did not in fact commit the crimes. See

*Green v. State,* 265 Ga. 263 (1) (454 SE2d 466) (1995). As discussed in Division 3 below, there was a factual basis in the record for the plea.

Given the facts in this record, we find that the court properly denied the motion to withdraw the plea and properly concluded that McCants freely and voluntarily entered the plea with an understanding of both the nature of the charges against him and the consequences of his plea.

3. McCants argues that there was no factual basis in the record for a plea to manslaughter.

Uniform Superior Court Rule 33.9 provides: "[n]otwithstanding the acceptance of a plea of guilty, the judge should not enter a judgment upon such plea without making such inquiry on the record as may satisfy him that there is a factual basis for the plea." At the transcribed plea hearing, the prosecutor stated that he expected the evidence at trial[1] would have shown the following. The victim was walking on Lenox Road towards his residence on Canter Road, when he was killed. Several witnesses heard four to five gunshots. Immediately after hearing the shots, one witness looked out of his window and saw a car, which he partially described to police, parked on Canter Road. This witness recalled that after the gunshots sounded, the brake lights on the car came on and the car sped down Lenox Road.

David Thompson, Delwin and Drwan Smith's father, gave a statement indicating that on the evening of the incident, McCants picked up Delwin Smith and they left in McCants' car. Thompson said that his son Drwan Smith had admitted shooting the victim. Thompson also told a co-worker that he thought both of his sons were involved in the shooting.

After the police took out a warrant, McCants turned himself in and gave a statement. In the first statement, he denied knowing anything about the shooting. He later gave a second statement in which he admitted that he had picked up Delwin and Drwan Smith on the evening of the murder and that they were riding on Lenox Road when Drwan asked him to pull over. McCants complied, and Drwan got out of the car. McCants recalled that he waited in the driver's seat with Delwin, who was seated in the passenger seat. McCants said he had no idea why Drwan had left the car. McCants said that Drwan came back to the car about five minutes later, said that he had shot someone, and they rode off. According to McCants' statement, he did not question Drwan any further about who he shot or what had hap-

---

[1] In *State v. Evans,* 265 Ga. 332, 335 (2), fn. 1 (454 SE2d 468) (1995), our Supreme Court stated that "the best method for establishing a factual basis" for the plea would be through a colloquy with the defendant, though the Court concluded that this was not necessary.

pened. McCants gave several different accounts of where the car was parked and of what he was doing during the time Drwan was out of the car. McCants then took the police to a lake in DeKalb County and showed them where the gun (which ballistically matched the victim's wound) had been disposed.

The court ascertained that there was a factual basis for the plea. We agree, conclude that the requirements of USCR 33.9 were met, and find this enumeration without merit. See *State v. Evans*, 265 Ga. 332; see also *Green v. State*, 265 Ga. 263 (2).

*Judgment affirmed. Andrews and Smith, JJ., concur.*

DECIDED JUNE 11, 1996 —
RECONSIDERATION DENIED JULY 2, 1996 —

*Charlotte Y. Kelly*, for appellant.
*Lewis R. Slaton, District Attorney, Alfred D. Dixon, Juliette O. W. Scales, Assistant District Attorneys*, for appellee.